**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

HEATHER D., et al.,                :
                                        :
           Plaintiffs,        :
                                          :      CIVIL ACTION NOS.
           v.                     :      01-770 & 03-3852
                                          :
NORTHAMPTON AREA SCHOOL      :
DISTRICT and CHRISTOFF,         :
                                          :
          Defendants.       :

**MEMORANDUM**

BUCKWALTER, S. J.                               June 19, 2007

          This case involves Plaintiff Heather D.'s claim for compensatory education for the failure of Defendant Northampton Area School District ("the School District" or "the District") to provide her with a free appropriate public education ("FAPE") under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.* Pursuant to the Court's Order of July 20, 2006, Plaintiffs' IDEA claim was bifurcated from the remaining counts in the Amended Complaint. (No. 03-3852, Docket No. 70). A trial was held on November 1, 2006 to determine the scope, appropriate form and the cost of (but not liability for) the desired or required remedy of compensatory education. The time period under consideration was limited to Heather's first through eighth grade years, or the 1996-97 academic year through the 2003-04 academic year.[1] After a careful review of the Administrative Record,[2] as supplemented by additional testimony

---

1.   Tr. Nov. 1, 2006 at 2

2.   References to decisions by the Special Education Hearing Officers in Heather's case will be designated "H.O." preceded by the year issued. Findings of Fact will be abbreviated "F.F." References to the Administrative Record will be designated "A.R." followed by the date docketed and applicable docket number. Whenever an exhibit both

                                                  (continued...)

and exhibits presented at trial on November 1, 2006, the Court will adopt the findings of fact and

conclusions of law as set forth in the Appeals Panel Opinions, with the following modifications:

(1) the statute of limitations as announced in <u>Montour</u> does not bar Heather's

claim for compensatory education for her first, second and third grade years (1996-97, 1997-98

and 1998-99);

(2) the School District denied Heather a FAPE for her first, second and third grade

years (1996-97, 1997-98 and 1998-99)

(3) the appropriate remedy for the denial of FAPE for Heather's first, second and

third grade years (1996-97, 1997-98 and 1998-99) is an award of 10 hours of compensatory

education per week for each school year.

The Court further concludes that the appropriate hourly amount for the compensatory education

award is $75.  Finally, Plaintiffs, as the prevailing party, are entitled to legal fees under the

IDEA.

## I.  BACKGROUND

As both parties are familiar with the facts, only a brief overview is presented here.

Heather is a resident of the Northampton Area School District and is currently 18 years old.

Plaintiffs James D. and Judy D. are Heather's parents ("Parents").   Heather suffers from von

Willebrand's disease, a type of hemophilia that causes her to bruise and bleed extremely easily.

Heather has also been diagnosed with Pervasive Developmental Disorder ("PDD"), a form of

autism; borderline mental retardation; bipolar disorder; obsessive compulsive disorder ("OCD");

---

2.  (...continued)
appears in the Administrative Record and is referenced in the Hearing Officer's decision, the Hearing Officer's
Decision will be cited.

attention deficit/hyperactivity disorder ("ADHD"); possible fetal alcohol syndrome; and specific learning disabilities.  Heather entered first grade in the regular education program in the School District for the 1996-97 school year.   In Re: Heather D., Sp.Ed.Op. No. 1360 at 1 (May 27, 2003).  At the end of each of the next five school years, Heather was promoted to the subsequent grade.  Following her fifth grade year, on June 20, 2001, Heather attempted suicide.  Id. at 3.  This resulted in lengthy hospitalizations in various facilities, and Heather did not return to district schools.  Id.

In June, 2001, the Parents requested a due process hearing, and a total of 12 sessions have been held.  Between July, 2002 and March, 2003, the parties attended nine sessions before Hearing Officer Bateman.  On April 8, 2003, Hearing Officer Bateman issued a decision ("2003 H.O. Decision") awarding compensatory education in the form of: (1) counseling one hour per week for first through fourth grade, minus the time Heather was not in school; (2) one half-hour per day for emotional support services for first through fifth grade; (3) a full year of services for sixth grade, minus the time Heather was hospitalized; and (4) for pendant placement - one hour per day for two months and three hours per day for the remaining months of seventh grade.[3]

Both parties appealed to the Appeals Panel who issued a decision on May 27, 2003 ("2003 A.P. Decision").   In Re: Heather D., Sp.Ed.Op. No. 1360.  The Appeals Panel vacated the award of compensatory education for first through third grade (1996-97, 1997-98, and 1998-99) based on Monsour School District v. S.T., 805 A.2d 29 (Pa. Commw. 2002), which announced a limitations period of two years maximum for compensatory education claims. Id. at

---

3.    2003 H.O. Decision at 60.

5.   With regard to the rest of Heather's claim, the Appeals Panel concluded that the District

denied her a FAPE for fourth through sixth grade (1999-2000, 2000-01, and 2001-02).  Id. at 6-7.

The Appeals Panel awarded Heather 10 hours per week for each week she was in school during

fourth and fifth grade (1999-2000 and 2000-01), 360 hours for sixth grade (2001-02) and

confirmed the Hearing Officer's pendent placement award for seventh grade (2002-03).  Id. at

10.  The Appeals Panel also concluded that the School District's 2002-03 Individualized

Education Plan ("IEP") did not offer an appropriate program for Heather.  Id.

Between January, 2004 and March, 2004, the parties attended due process hearing

sessions before Hearing Officer Smith.  In his decision dated April 5, 2004 ("2004 H.O.

Decision"), the Hearing Officer ordered the School District to provide Heather with

compensatory education of three hours per week for the 2003-04 school year (eighth grade) until

a new IEP was developed for Heather.[4]  This award was affirmed by the Appeals Panel ("2004

A.P. Decision").  In Re Heather D., Sp.Ed.Op. 1485 at 10 (May 19, 2004).

On June 27, 2003, Plaintiffs filed the instant action (No. 03-3852)[5] requesting that

the Court review the administrative decision and award additional compensatory education under

IDEA.  Following the Court's order for bifurcation of the IDEA claim (Docket No. 70), a trial

was held on November 1, 2006.  At trial, the Plaintiffs presented testimony from Peter Meyer,

M.D., a pediatric psychiatrist, Children's Hospital of Philadelphia; Patricia Lear, M.Ed., Wilson

Reading program instructor, certified special education teacher, and owner/operator of Lear

---

4.   2004 H.O. Decision at 14. The Decision also dealt with other issues not relevant to the Court's inquiry here.

5.   Case No. 03-3852 was consolidated with Case No. 01-770 pursuant to the Court's order of June 7, 2004 (Docket No. 13).

Educational Center; and Jennifer McLaughlin, M.A., Behavioral Health Rehabilitation Services

Supervisor at Valley Youth House.  Defendant presented the testimony of Andrew Klein, an

Independent Special Education Consultant.

## II.  STANDARD OF REVIEW

The IDEA authorizes judicial review of administrative decisions and provides

that:

> In any action brought under this paragraph, the court -
>
> (I)  shall receive the records of the administrative proceedings;
>
> (ii) shall hear additional evidence at the request of a party; and
>
> (iii) basing its decision on the preponderance of the evidence, shall grant
>
> such relief as the court determines is appropriate.

20 U.S.C. § 1415(i)(2)(c).  Although the statute requires a District Court to make its own

findings by a preponderance of the evidence, the court must also give "due weight" to the state

administrative hearings.  Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S.

176, 206 (1982); L.E. v. Ramsey Bd. of Educ., 435 F.3d 384, 389 (3d Cir. 2006) (noting that

district courts should apply a modified version of de novo review, giving due weight to the

factual findings of the ALJ).  In a two-tiered administrative scheme such as Pennsylvania, this

usually means deference to the factual determinations of the Appeals Panel, rather than the

Hearing Officer.  Carlisle Area Sch. Dist. v. Scott P., 62 F.3d 520, 529 (3d Cir. 1995)

(concluding that "a district court should still give 'due weight' to the appeals panel decision

when it reverses the Hearing Officer's conclusions of law, inferences from proven facts, and

factual findings based on credibility judgments where non-testimonial, extrinsic evidence

justified the appeals panel's contrary decision").

## III.  DISCUSSION

### A.  Applicable Limitations Period

The 2003 Appeals Panel Order vacated Heather's award of compensatory

education for first, second and third grade (1996-97, 1997-98, and 1998-99) based on the statute

of limitations set forth in <u>Montour Sch. Dist. v. S.T.</u>, 805 A.2d 29.  In <u>Montour</u>, the Pennsylvania

Commonwealth Court held that parents must request a due process hearing within one year, or

two years if mitigating circumstances exist, of the date upon which the parents accept an IEP.

805 A.2d at 40.  Plaintiffs argue that the Appeals Panel erred in applying <u>Montour</u> to limit

Heather's claim for compensatory education.  While Defendant argues that the 2003 Appeals

Panel Order should be affirmed, they do not specifically address the equitable limitations issue.

This Court agrees with Plaintiffs that the Appeals Panel erred in applying <u>Montour</u> to limit

Heather's claim for compensatory education.

The Appeals Panel concluded that mitigating circumstances existed in Heather's

case and allowed consideration of compensatory education for the maximum of two years.  <u>In</u>

<u>Re: Heather D., Sp.Ed.Op. No. 1360</u> at 6.  In permitting consideration back to June, 1999, the

Appeals Panel explained:

> The parents first requested due process in June 2001.  The District made
> no effort until at least August 30, 2001 to follow through on this request.
> It was not until the parents themselves contacted the Office of Dispute
> Resolution in December 2001 that these proceedings were begun.  These
> facts indicate an unreasonable delay by the District as well as support for
> the parents' uncontradicted assertion that they were never explained their
> due process rights during Heather's elementary years.

Id. at 5-6.  As additional support for its finding of mitigating circumstances, the Appeals Panel

pointed to the District's delay in providing a written Section 504 plan for Heather's von

Willebrand's disease and the fact that Heather's first IEP was only developed after an evaluation

requested by the parents.  Id. at 6.  Because the Appeals Panel concluded that a limitations period

applied to Heather's claim, it did not consider the merits nor award any compensatory education

for the time period prior to June 1999, i.e. first through third grade.

     The Panel incorrectly concluded that Montour controls whether an equitable

limitation applies to Heather's claim for compensatory education.  Courts within the Eastern

District of Pennsylvania have uniformly disapproved of Montour and refused to apply a

limitations period to a disabled child's claim for compensatory education made prior to the July

2005 amendments to the IDEA.  E.g. Robert R. v. The Marple Newton School District, 2005 WL

3003033 at *3-4 (E.D. Pa. Nov. 8, 2005).

     In Amanda A., the court examined whether Montour was consistent with

decisions of the Third Circuit and found that the Third Circuit did not intend that the time

limitation on requests for retroactive reimbursement of private school tuition be applied to

requests for compensatory education.  2005 WL 426090, at *5-6 (E.D. Pa. Feb. 23, 2005).  The

court explained that:

> [I]mposing an equitable limitation on Amanda's claim for compensatory
> education for the years in which she did not receive a FAPE, but during
> which her parents chose to work with the School District rather than
> request a due process hearing, would effectively punish her for her
> parents' lack of vigilance, a result expressly forbidden by both M.C. [81
> F.3d 389 (3d Cir. 1996)] and Ridgewood [172 F.3d 238 (3d Cir. 1999)].

Id. at *6.[6]  Accordingly, the Court holds that Montour does not apply to limit Heather's
entitlement to compensatory education for first through third grade (1996-97, 1997-98, and 1998-99).

       **B.**  **Compensatory Education**

       The IDEA empowers District Courts with considerable discretion when
fashioning a remedy.  20 U.S.C. § 1415(i)(2)(C)(iii) (the court "shall grant such relief as the court
determines is appropriate.")  Compensatory education is an appropriate remedy where a school
district knows, or should know, that a child's educational program is not appropriate or that she
is receiving only a de minimis benefit and fails to correct the situation.  M.C. on behalf of J.C. v.
Cent. Reg'l Sch. Dist., 81 F.3d 389, 397 (3d Cir. 1996).  Compensatory education is designed to
provide eligible students with the services they should have received pursuant to a FAPE.  Lester
H. V. Gilhool, 916 F.2d 865, 873 (3d Cir. 1990) (holding that an award of compensatory
education merely compensated the student for an inappropriate placement, belatedly allowing
him to receive the remainder of his FAPE).   The amount of compensatory education is
calculated by finding the period of deprivation of special education services and excluding the
time reasonably required for the school district to rectify the problem. M.C. v. Cent. Reg'l Sch.
Dist., 81 F.3d at 397.

---

6.   See also  Robert R., 2005 WL 3003033 at *3 (noting that since Amanda A. was decided, five additional courts
in the Eastern District of Pennsylvania have adopted Judge Padova's reasoning and granted remands to award
compensatory education in similar cases) (citing Anthony C., et al. v. Neshaminy Sch. Dist. No. 05-3383 (E.D. Pa.
Oct. 27, 2005); Michael C., et al. v. Wissahickon Sch. Dist., 2005 WL 2739418 (E.D. Pa. Oct. 21, 2005); S. et al. v.
Wissahickon Sch. Dist., No. 05-1284 (E.D. Pa. Oct. 5, 2005); Curtis B., et al. v. Owen J. Roberts Sch. Dist., No. 05-
3380 (E.D. Pa. Sept. 20, 2005); M. et al v. North Penn Sch. Dist., No. 05-3382 (E.D. Pa. Sept. 16, 2005)).

Plaintiffs argue that the Administrative Record, including later additions to it, supports a full year of compensatory education for each school year at issue, for a total award of 7380 hours.[7]  Defendant requests that the Court affirm the Appeals Panel's award of 1648 hours, claiming that the award is full and appropriate relief for Heather.  Based on a review of all of the evidence of record, the Court concludes that Heather is owed compensatory education beginning in first grade, as that was when the School District was put on notice of Heather's special education needs.  From that time on, an appropriate program to address those needs should have been in place.

Because the Appeals Panel incorrectly applied a limitations period to Heather's claim, it failed to consider the merits of Heather's claim stemming from her first through third grade years (1996-97 through 1998-99).  Based on the entire record and providing the appropriate deference to the factual findings of the Hearing Officer, the Court concludes that the School District denied Heather a FAPE during those years.  As to the proper remedy, the Court adopts the Appeals Panel's presumption regarding Heather's fourth through sixth grade years that she was entitled to ten hours per week.  Thus, the Court awards Heather 780 hours of compensatory education for her first, second and third grade years combined (1996-97 through 1998-99).  The Court affirms the Appeals Panel award for Heather's fourth through eighth grade years (1999-2000 through 2002-03).  In total, Heather is entitled to 2428 hours of compensatory education for first through eighth grade.  Finally, the Court finds that the appropriate hourly rate for this award

---

7.   Plaintiffs' calculation is derived as follows: the sum of 900 hours/year for 6 years and 990 hours/year for 2 years.

is $75, bringing the total monetary award to $182,100.  These findings are explained in greater detail below.

1.    Early Indications of Heather's Special Needs

Even prior to Heather's start in first grade (1995-96), the District was aware of Heather's special academic and behavioral needs.  A report issued by Capital Area Intermediate Unit[8] ("CAIU Report") on April 11, 1995 noted that her ADHD compromised her school performance and made specific recommendations for classroom strategies in order for Heather to be successful in a school setting.[9]  For example, the specialist advised repeating directions more than once, giving instructions directly to Heather, having Heather repeat directions back to the teacher, and continuing direct supervision until Heather had begun her task.[10]  The Comprehensive Evaluation Report ("CER"), issued on May 9, 1995 and done at the request of the Parents, recommended speech and language support, as well as occupational therapy as needed.[11]  Based on these recommendations, an IEP for speech and language services was implemented for Heather's pre-first grade year (1995-96) and completed on May 21, 1996.[12]

---

8.   CAIU performed an evaluation following Heather's admission to the Child Psychiatry Inpatient Unit at the Hershey Medical Center on March 29, 1995.  The report notes that communication was initiated and maintained with the principal of Heather's elementary school.  Thus, knowledge of the content of the report can be imputed to the District.

9.   2003 H.O. Decision at F.F.  #10.

10.   A.R. Dec. 5, 2003 (Docket No. 9) at Pl. Ex. 19, p. 6.

11.   2003 H.O. Decision at F.F. #14, #16.

12.   Id. at F.F.  #19.

Although the District initially continued speech and language support into Heather's first grade year (1996-97), these services were discontinued later that year.[13]

Notably, the District did little to address Heather's behavioral or psychiatric problems which began to surface at this time.  For example, Heather was hospitalized for approximately thirteen weeks during first grade for self-abusive behavior compounded by her von Willebrand's disease.[14]  Upon her return, the District was provided with protocols for dealing with Heather's specific behavioral problems.[15]  Although Heather's teacher testified that the protocols were unnecessary since Heather was not exhibiting the behavioral problems at school, the fact that protocols were provided is significant in itself.  In addition, beginning in kindergarten and lasting throughout third grade, Heather had problems with urinating in her clothing at school.[16]  Finally, Heather's first grade teacher testified that Heather showed signs of being tired from changes in her medication and had problems paying attention in class.[17]  Despite these problems, the District failed to evaluate Heather for special education services or otherwise act to ensure that Heather was being provided a proper education.

All of the above facts lead the Court to conclude that Heather should have been identified as a candidate for special education and related services in first grade.  This conclusion is consistent with Hearing Officer Bateman's observation that, at a minimum, an evaluation of

---

13.   Id. at F.F. #24.

14.   Heather knew that if she picked her nose, it would bleed extremely easily.  Pl. Br. at 3.

15.   2003 H.O. Decision at F.F. #27.

16.   2003 H.O. Decision at 41.

17.   Id. at F.F. #28.

Heather should have been completed upon her return from being hospitalized in the first grade.[18] The District's failure to provide Heather with an IEP for the majority of her elementary years led the Hearing Officer to conclude that, even given <u>Montour</u>, the Parents showed the necessary mitigating circumstances to permit consideration back to first grade (1996-97).  While the Hearing Officer's interpretation of <u>Montour</u> was overturned by the Appeals Panel, his factual findings can still be given weight by this Court, especially in light of our conclusion that there is no equitable limitation on Heather's claim.  The Court concludes that the District failed to identify Heather's special needs and provide her with the appropriate services, thus she was denied a FAPE beginning in first grade.

### 2.   Appropriate Hourly Award

We reject Plaintiffs' contention that a full year of compensatory education for each year at issue is warranted.  The record does not support a conclusion that Heather's needs pervaded her entire school day.[19]  Hearing Officer Bateman recognized that although it was clear that Heather was having behavioral and emotional problems, the "preponderance of the evidence indicate[d] Heather was making academic progress[.]"[20]  This also seemed to be the general consensus among Heather's teachers in first through third grade.[21]  Heather started her second grade year with acceptable math grades, and although Plaintiffs attribute this to the fact that it was for the portion of the year which reviewed material from first grade, it nevertheless

---

18.   <u>Id.</u>  at 42 (stating that "sadly" no evaluation was completed).

19.   E.g. <u>In Re: Student N. Spec. Ed. Op. No. 1233</u> (noting that student's needs were pervasive across all subjects).

20.   2003 H.O. Decision at 38.

21.   <u>Id.</u>

12

demonstrates that she retained some of what she learned in the prior year. [22]   In fourth grade,

Heather earned quarterly grades of C, B, B and B.[23]  This evidence of general academic progress

demonstrates that an hour for hour remedy of compensatory education is inappropriate for this

case.

        The Court is equally unable to comply with Defendant's request that the Appeals

Panel award of 1648 hours be affirmed as full and appropriate relief because this award fails to

take into account compensatory education for Heather's first through third grade years (1996-97

through 1998-99).  Given the Court's conclusion that Heather was denied a FAPE for those

years, some award of compensatory education for those years must be fashioned.  In doing so, the

Court is mindful of the deference owed to the factual findings of the Hearing Officers and

Appeals Panel.

        At trial, Dr. Meyer, Plaintiff's expert, conceded that, unlike the approach of

Defendant's expert which focused on compensating Heather for services denied, Dr. Meyer

focused on what services Heather needed to correct her educational deficiencies, i.e. to achieve

her maximum potential.[24]  The Third Circuit, in discussing the right to compensatory education,

has stated that where such an award is appropriate, the "disabled child is entitled to

compensatory education for a period *equal to the period* of deprivation[.]" <u>M.C. v. Cent. Reg'l</u>

<u>Sch. Dist.</u>, 81 F.3d at 397 (emphasis added).  Based on this language, the Court concludes that

Defendant's approach, which ties an award of compensatory education to services denied in the

---

22.   Pl. Br. at 20.

23.   2003 H.O. Decision at 38;  <u>see also</u> <u>Rowley</u>. 458 U.S. at 207 n. 28 (noting that passage from grade to grade is an important factor in determining educational benefit).

24.   Tr. Nov. 1, 2006 at 56, 60.

past, rather than a corrective approach designed to help the student perform in accordance with some speculated potential, is more in line with the standard elucidated by the Third Circuit.

In determining the appropriate award, it is instructive to break down the 1648 hours awarded by the Appeals Panel.[25]  By year, the Appeals Panel awarded the following:

1999-00 (fourth grade):  10 hours/week x 36 weeks= 360 hours

2000-01 (fifth grade): 10 hours/week x 36 weeks = 360 hours

2001-02 (sixth grade): 360 hours

2002-03 (seventh grade): 1 hour/day x 2 months + 3 hours/day x 7 months = 460 hours

2002-03 (eighth grade): 3 hours x 36 weeks = 108 hours

**Total Hours** = 1648

 In Re: Heather D., Sp.Ed.Op. No. 1360 at 10;  In Re: Heather D., Sp.Ed.Op. No. 1485 at 10.

In opinions rendered May 27, 2003 and May 19, 2004, the Appeals Panel explained its rationale for awarding the amount of hours it did.   The Appeals Panel concluded that the School District failed to provide FAPE to Heather for her fourth and fifth grade years (1999-2000 and 2000-01). In Re: Heather D., Sp.Ed.Op. No. 1360 at 6.  The Panel estimated that had Heather been provided with the necessary special education and related services, she would have been entitled to ten hours per week.  Id. at 6.  Specifically, the Panel highlighted Heather's "significant weaknesses in math and organizational and study skills" as indicators that Heather needed specially designed instruction and the fact that her behavioral problems had " a clear

---

25.   The Court assumes a 36 week school year.

adverse impact on her learning."  Id.  Thus, the Panel awarded ten hours per week for the time that Heather was in school during fourth and fifth grade.[26]

    In regard to sixth grade (2001-02), the Panel concluded that the "District's failure to fulfill any of its obligations during 2001-02 constitutes a denial of FAPE[.]"  Id. at 7.  Noting that the "District clearly ignored any obligation it had to ensure that Heather was receiving an appropriate education[,]" and that "[t]here can be no justification for a total abdication of its responsibility by merely claiming that the child was not accessible," the Panel refused to reduce the award for the time that Heather spent hospitalized.  Id.  Because the Panel previously concluded that Heather should have been receiving ten hours per week in services in prior years, the Panel presumed that her needs were at least the same and awarded 360 hours for the 2001-02 school year.  Id.

    Based on an independent analysis of the record evidence, including testimony presented at trial, the Court will affirm the Appeals Panel's hourly award for Heather's fourth through eighth grade years (1999-2000 through 2003-04).  Given Heather's specific behavioral and academic issues, 10 hours per week is a reasonable estimate of the amount of educational and behavioral services denied to Heather in fourth through sixth grade.  As to the seventh and eighth grade award (2002-03 and 2003-04), there was no discrepancy between the amount awarded by the Hearing Officers and Appeals Panel.  In light of the weight due to administrative

---

26.  In footnote 23, the Panel explained: "It does not appear that the parents have excepted to the hearing officer's deduction from this portion of the compensatory education award those period of time when Heather was not in school.  This panel's order will therefore also award compensatory education only for the time she was in school."  In Re: Heather D., Sp.Ed.Op. No. 1360 at 6 n. 23.  However, the hours stipulated to by the parties appear to include a full 360 hours for both fourth and fifth grade, without any deduction for the time Heather was not in school.  Because this number was stipulated to by the parties, and Defendant makes no argument that this amount should be reduced by the time Heather was not in school, the Court will presume that Heather is entitled to the full 360 hours.

proceedings and in the absence of evidence in the record to contradict their findings, the Court will affirm the award of 460 hours for seventh grade (2002-03) and 108 hours for eighth grade (2002-03).

      As to the appropriate award for first through third grade, this Court adopts the Appeals Panel's presumption that Heather should have been receiving ten hours per week for services in fourth through sixth grade and extends this presumption to Heather's first, second and third grade years (1996-97, 1997-98, 1998-99).  The Court recognizes that this award is greater than the amount awarded by Hearing Officer Bateman, who unlike the Appeals Panel considered the merits of an award for first through third grade.[27]  However, such a determination is entirely proper under the due weight mandate, which requires the Court to consider, although not necessarily to accept, the administrative fact findings.  Carlisle Sch. Dist., 62 F.3d 520 at 529.

      An independent analysis of the record, guided by the factual findings of Hearing Officer Bateman, supports the conclusion that Heather should have been receiving 10 hours per week of services.  The problems that plagued Heather throughout her academic years did not suddenly manifest in fourth grade.  For example, in both first and third grade, Heather was hospitalized for extended periods of time due to self-abuse, missing a total of 30 weeks of school.[28]  Heather's first, second and third grade teachers reported that Heather was easily

---

27.    Hearing Officer Bateman awarded Heather one (1) hour per week of counseling, minus the time she was not in school and one-half (½) hour of emotional support per day.  (2003 H.O. Decision).  Given that Heather missed 30 weeks of school, this award totals approximately 273 hours for Heather's first through third grade years. 273 hours was arrived at by the following calculation: (1 hour/week x 78 weeks) + (.5/day x 78 weeks).  The Court's formulation awards Heather 780 hours for first through third grade.

28.    Heather missed 13 weeks in first grade and 17 weeks in third grade.  2003 H.O. Decion at F.F. #21, #39.

distracted or had problems paying attention in class and had to be redirected.[29]  Heather's

problems with urinating in her clothing started in kindergarten and lasted through third grade.[30]

Her mother testified that Heather continued to have accidents in her later years, albeit less

frequently.[31]  Finally, her weakness in math was apparent as early as second grade (1997-98),[32]

but not formally identified until the CER issued May 30, 2001.[33]

Based on the above discussion, the Court finds that Heather should have been

receiving ten hours per week of services in first through third grade (1996-97 through 1998-99),

thus entitling her to an additional 780 hours[34] of compensatory education.  The Parents may

decide how the hours should be spent so long as they take the form of any appropriate

developmental, remedial or enriching instruction that furthers the goals of Heather's IEP.  In Re:

Heather D., Sp.Ed.Op. No. 1485 at7; In Re: R.O. Spec. Ed. Op. No. 1519 at 5 (Aug. 23, 2005).

The report of Andrew Klein provides a useful guide for the types of services that will aid

Heather.[35]

---

29.   2003 H.O. Decision at F.F. #28, #37, #45.

30.   A.R., Dec. 5, 2003 (Docket No. 9) Ex. 15 at 1237.

31.   Id.

32.   2003 H.O. Decision at F.F. #42, 96.  On her second grade report card, Heather received a grade of "G" (good) in the first quarter,  "S" (satisfactory) in the second quarter, "U" (unsatisfactory) in the third quarter and "N" (needs improvement) in the fourth quarter.  A.R., Dec. 5, 2003 (Docket No. 9) Ex. 25 at School District 30.

33.   2003 H.O. Decision at F.F. #96.

34.   780 hours was derived by the following calculation (broken down by grade year starting with first grade):  (10 hours/week x 23 weeks) + (10 hours/week x 36 weeks) + (10 hours/week x 19 weeks).

35.    Report of Andrew M. Klein, Def. Trial Ex. 2 (hereinafter "Klein Report") at p. 4-6.  Dr. Meyer, Plaintiffs' expert, agreed that Mr. Klein provided a "quite comprehensive list" of services.  Tr. Nov. 1, 2006 at 52-53.

C.        **Appropriate Hourly Rate for Compensatory Education Award**

At trial, both parties presented experts on the issue of the appropriate amount of reimbursement for the compensatory education awarded.  Both parties agree that reimbursement for compensatory education services shall be at the rate that the parent is obliged to pay, not a district-determined rate.[36]  Plaintiffs argue that the proper hourly rate for reimbursement is $132 per hour, the combined hourly average for behavior support and academic/vocational instruction.  Defendant maintains that an appropriate cost for services is $55 per hour.  As more fully discussed below, the Court finds that the appropriate hourly amount is $75.

Plaintiffs presented the testimony of Patricia J. Lear, M.Ed., owner of Lear Educational Center ("Lear Center"), which provides private services to special needs students and services directly to school districts in the Lehigh Valley.[37]  Ms. Lear testified that Lear Educational Services could provide Heather with educational services, such as reading, spelling and writing instruction and age-appropriate models and materials.[38]  These services would be provided through one-on-one instruction at a rate of $90 to $100 per hour and encompass attending IEP meetings, writing IEP goals and objectives, and working with peripheral professionals involved in Heather's case.[39]  This rate does not include the cost of any necessary paraprofessionals.[40]

---

36.    Pl. Br. at 38; Def. Br. at 10.

37.    Tr. Nov. 1, 2006 at 18.

38.    Id. at 25-26.

39.    Id. at 27.

40.    Report of Patricia J. Lear, Pl. Trial Ex. 3 (hereinafter "Lear Report").

Ms. Lear conceded that Lear Center's billing rate of $90 to $100 was in the high range for similar services in the Lehigh Valley.[41]   Moreover, her conclusion regarding the services to be provided to Heather was based only on the July, 2004 neurological report of Dr. Lazar and the August 27, 2006 report of Dr. Meyer.  Ms Lear testified that while she typically reviews materials from the school district, such as assessments and past services provided, she did not do so in Heather's case.[42]  Thus, while the Court gives some weight to Ms. Lear's opinion regarding the types of services from which Heather could benefit, the Court declines to adopt Ms. Lear's recommended hourly rate.

Plaintiff's also presented the testimony of Dr. Peter Meyer, M.D., a pediatric and adolescent psychiatrist, who has consulted in Heather's care since 2001.[43]  Dr. Meyer testified that Heather would need continuous educational, vocational, social and emotional remediation up to at least age 25, if she is to achieve some degree of semi-autonomy and gainful employment.[44]  Dr. Meyer recommended a personal one-to-one coach in Heather's school vocational training; further speech and language therapy; assistive technology; and group or individual therapy to strengthen her social skills.[45]

In his report, Dr. Meyer noted that Heather would continue to need behavioral support over the next several years and any abrupt changes "would expose Heather to major

---

41.   Tr. Nov. 1, 2006 at 32-33.

42.   Id. at 35-36.

43.   Tr. Nov. 1, 2006 at 45.

44.   Id. at 47.

45.   Id. at 47-48, 51.

stress and risk her decompensation or regression."[46]  On this issue, Plaintiffs presented the

testimony of Jennifer McLaughlin, a supervisor from Valley Youth House, a provider of

behavioral and emotional support services to children.[47]  Mrs. McLaughlin testified that, as of

March, 2006, Valley Youth House provided Heather with 47.5 hours of services per week (41.5

hours of Therapeutic Staff Support, 3 hours of Mobile Therapy, and 3 hours of services from the

Behavioral Specialist Consultant).[48]  The hourly cost for these services are $32 for Therapeutic

Staff Support, $42 for Mobile Therapy, $51 for a master's level Behavioral Specialist Consultant,

and $64 for a Behavioral Specialist Consultant at the doctorate level.[49]

       The School District presented the testimony of Andrew Klein, an independent

special education consultant, who consults for both parents and school districts.[50]  For 23 years,

Mr. Klein served as a special education administrator for the Lancaster-Lebanon Intermediate

Unit.[51]  He has also served as special education director in the Downingtown Area School

District and Wilson School District.[52]  In 1986, Mr. Klein was appointed a special education due

process hearing officer, a position he held for 17 years.[53]

---

46.   Rep. of Dr. Peter Meyer, M.D.,  Pl. Trial Ex. 5 (hereinafter "Meyer Report") at 2.

47.   Tr. Nov. 1, 2006 at 4.

48.    Id. at 9.

49.   Report of Jennifer McLaughlin, Pl. Trial Ex. 1 (hereinafter "McLaughlin Report") at 1.

50.    Tr. Nov. 1, 2006 at 67

51.   Id. at 66.

52.   Id.

53.   Id.

In arriving at his opinion, Mr. Klein reviewed an extensive list of records, including depositions of Heather's Parents, teachers and treatment professionals, the decisions of the hearing officers and appeals panels, and various evaluations of Heather throughout the years.[54]  Based on his experience and the records he reviewed, Mr. Klein derived an hourly rate of $55.[55]  Using salary figures for the School District, Mr. Klein calculated that the average teacher with a master degree was paid $47 per hour for the 2004-05 school year.[56]  To this amount, Mr. Klein included an allowance for fringe benefits, which are typically 30 percent of salary, bringing the hourly amount to $61.[57]

This figure, since it was derived from a salary schedule not applicable to the years Heather was in school, had to be adjusted for inflation and contract raises.[58]  Based on his experience, Mr. Klein estimated that teacher contracts were increased at a rate of three percent from one year to the next.  Working backwards, Mr. Klein reduced the $61 by three percent to arrive at the hourly rate for each school year from 1999-2000 to 2003-04.[59]  In his report, Mr. Klein explained that he also factored in paraprofessional salaries for Heather's fourth and fifth

---

54.    For a full list, see Klein Report at 1-3.

55.    Klein Report at 8.

56.    At trial Mr. Klein explained that the salary schedule for Northampton School District bases a teacher's salary on his or her teaching degree, e.g. bachelor of arts, master of arts, doctoral degree.  Tr. Nov. 1, 2006 at 73.  Using this schedule, Mr. Klein determined that the average salary for a teacher possessing a master of arts degree was $55,100 for the 2004-05 school year.  Id.  Then, assuming a 180 day instructional year and six and a half hour work day, Mr. Klein derived an hourly amount of $47.  Id.

57.    Id. at 74.

58.    Id.

59.    Id.

grade years (1999-2000 and 2000-01), which he valued at $9 per hour.[60]  Finally, looking at the

rates for the individual school years, as well as the paraprofessional addition, Mr. Klein arrived at

a mean, $55 per hour.[61]

       Both parties recognize the need for paraprofessional services as part of Heather's

compensatory education, albeit not the cost nor extent of such services.[62]  By virtue of Mr.

Klein's background and experience, the Court credits Mr. Klein's testimony.  However, some

upward adjustment must be made to his calculation because it does not provide a sufficient

allotment for a paraprofessional.[63]  Ms. Lear, who testified that Lear Center's services would cost

$90.00-100.00 per hour even absent paraprofessional support, conceded that her rates were on

the higher range for services, and the Court agrees.  Similarly, the Court chooses not to adopt the

rates as testified to by Plaintiff's other expert Mrs. McLaughlin.  Taking into account all of the

evidence presented at trial on the cost of services, the Court concludes that the appropriate hourly

rate for Heather's compensatory education award is $75 per hour.

       1.   <u>Attorneys' Fees</u>

       The IDEA provides that: "In any action or proceeding brought under this section,

the court, in its discretion, may award reasonable attorneys' fees as part of the costs – (I) to the

prevailing party who is the parent of a child with a disability[.]"  20 U.S.C. § 1415(i)(3)(B)(i)(I).

---

60.   Klein Rep. at 7.

61.   <u>Id.</u>

62.   Both the Defendant's and Plaintiffs' experts included an allotment for a paraprofessional in their calculations.
Trial Tr., Nov. 1, 2006, at 86 (Mr. Klein included a paraprofessional rate for only two of the school years at issue);
<u>Id.</u> at 52 (Dr. Meyer recommended full time therapeutic staff support until Heather builds up the skills to control
impulses and sustain herself without undue anxiety and self-injurious behavior).

63.   Mr. Klein testified that his figure of $55 per hour included $9 an hour for a paraprofessional for only the 1999-
2000 and 2000-01 school years.  Tr. Nov. 1, 2006 at 86.

As the prevailing party, Plaintiffs are entitled to reasonable attorneys' fees.  Plaintiffs are directed to file a petition for attorney's fees within ten days of the date of the accompanying order.

**IV.   CONCLUSION**

For the foregoing reasons, Court concludes that the School District denied Heather a FAPE for her first through eighth grade years.  As a remedy, she is entitled to 2428 hours of compensatory education.  Using a $75 hourly amount, this yields a compensatory education fund of $182,100.  Plaintiffs, as the prevailing party, are entitled to reasonable legal fees under the IDEA.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

HEATHER D., et al.,                          :
                                             :
                    Plaintiffs,              :
                                             :        CIVIL ACTION NOS.
          v.                                 :        01-770 & 03-3852
                                             :
NORTHAMPTON AREA SCHOOL                       :
DISTRICT and CHRISTOFF,                       :
                                             :
                    Defendants.              :

**ORDER**

_____**AND NOW**, this 19th day of June, 2007, upon consideration of Plaintiffs' Post-

Trial Brief (Docket No. 75), Defendant Northampton Area School District's Post-Trial Brief

(Docket No 74), the entire Administrative Record, including the later additions to it, and the

evidence presented at Trial on November 1, 2006, it is hereby **ORDERED** that the Court will

adopt the findings of fact and conclusions of law as set forth in the Appeals Panel Opinions Nos.

1360 and 1485 as its own, with the following modifications:

        (1)    the statute of limitations as announced in <u>Montour</u> does not bar Heather's

claim for compensatory education for her first, second and third grade years (1996-97, 1997-98

and 1998-99);

        (2)    the School District denied Heather a FAPE for her first, second and third

grade years (1996-97, 1997-98 and 1998-99); and

(3)      the appropriate remedy for the denial of FAPE for the 1996-97, 1997-98 and 1998-99 school years is an award of 10 hours of compensatory education per week for each school year.

It is further **ORDERED** that the appropriate hourly amount for the compensatory education award is $75.  Because Plaintiff is entitled to 2428 hours of compensatory education, the total amount of the award is $182,100.

Finally, Plaintiffs, as the prevailing party, are entitled to legal fees under the IDEA.  Plaintiffs are directed to file a petition for attorney's fees within ten days of the date of this order.  At the same time, Plaintiffs should file a proposed order regarding to whom and under what terms and conditions the $182,100 should be awarded.  Defendants may file a response to both the petition for attorney's fees and the proposed order within ten (10) days of being served with the same.

BY THE COURT:


 *s/ Ronald L. Buckwalter, S. J.*
RONALD L. BUCKWALTER, S.J.